IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | ) Chapter 15 |
| | ) |
| PT HOLDCO, INC., *et al.*,[1] | ) Case No. 16-10131 (LSS) |
| | ) (Jointly Administered) |
| Debtors in a Foreign Proceeding. | ) |
| | ) **RE: D.I. 23** |

**ORDER PURSUANT TO SECTIONS 363, 365, 1501, 1517, 1519,
1520, 1521 AND 105(a) OF THE BANKRUPTCY CODE AND
BANKRUPTCY RULES 2002, 6004 AND 9014, FOR ENTRY OF AN
ORDER RECOGNIZING AND ENFORCING THE ASSIGNMENT, APPROVAL
AND VESTING AND DISTRIBUTION ORDERS AND GRANTING RELATED RELIEF**

Upon consideration of the Motion (the "Sale Recognition Motion")[2] of the Foreign Representative for PT Holdco, Inc., PTUS, Inc. Primus Telecommunications, Inc., Lingo, Inc., and Primus Telecommunications Canada Inc. (collectively, the "Debtors") in Canadian insolvency proceedings with Court File No. CV-16-11257-00CL (the "Canadian Proceeding") pending in Canada before the Ontario Superior Court of Justice (Commercial List) (the "Canadian Court")[3] for entry of an order, pursuant to sections 105(a), 363(b), (f), (m) and (n), 1501, 1519, 1520 and 1521 of the Bankruptcy Code and Bankruptcy Rules 2002, 6004 and 9014 and Local Rule 6004-1, giving full force and effect to and enforcing the Assignment Order (the "Assignment Order"), the Approval and Vesting Order (the "Vesting Order") and the Stay

---

[1] The last four digits of the Employer Identification Number or Canadian Business Number, as appropriate, for each debtor follow in parentheses: PT Holdco, Inc. (3731), PTUS, Inc. (0542), Primus Telecommunications, Inc. (4563), Lingo, Inc. (7778), and Primus Telecommunications Canada, Inc. (5618).

[2] Capitalized terms not otherwise defined herein shall have the meanings ascribed to them in the Sale Recognition Motion.

[3] The Monitor was appointed as monitor of the Debtors pursuant to provisions of Canada's Companies' Creditors Arrangement Act, R.S.C. 1985, c. C-36 (the "CCAA"), the statute under which the Debtors have been granted relief from creditors. An initial order ("Initial Order") was entered on January 19, 2016 in the Ontario Superior Court of Justice by the Honourable Mr. Justice Penny, Court File No. CV-16-11257-OOCL, In the Matter of a Plan of Compromise or Arrangement of PT Holdco, Inc., Primus Telecommunications Canada Inc., PTUS, Inc. Primus Telecommunications, Inc., and Lingo, Inc. *See* **Exhibit 1**, attached hereto,

Extension and Distribution Order (the "Distribution Order" and collectively, the "Canadian Orders"), each entered by the Canadian Court in the Canadian Proceeding on February 25, 2016 pursuant to which the Canadian Court has, *inter alia*, authorized the transaction contemplated in the APA, being the sale and transfer (the "Sale") by the Debtors of their right, title and interest in and to substantially all of the business of the Debtors (collectively, the "Purchased Assets") to Birch Communications, Inc. (the "Purchaser"), pursuant to the Asset Purchase Agreement ("APA") by and between the Debtors and the Purchaser, dated January 19, 2016, free and clear of all claims, liabilities, encumbrances, except as set forth in the APA and granting certain related relief; and upon declaration of Nigel Meakin (the "Meakin Declaration") [D.I. 6], the February 2nd Nowlan Affidavit and the Osler Affidavit and subject to the orders of this Court limiting notice in these Chapter 15 Cases, all parties in interest having been heard, or having had the opportunity to be heard, regarding the recognition and enforcement of the Canadian Orders; and the Canadian Court have entered the Canadian Orders; and this Court having reviewed and considered the Sale Recognition Motion, the arguments of counsel made, and the evidence adduced at a hearing before this court (the "Sale Recognition Hearing"); and upon the record of the Sale Recognition Hearing and these Chapter 15 Cases, and after due deliberation thereon, and good cause appearing therefore and in accordance with Bankruptcy Rule 7052, it is hereby:

**FOUND AND DETERMINED THAT:[4]**

A. The Canadian Court has duly entered the Canadian Orders, *inter alia*,: (i) approving and authorizing the Debtors' execution of the APA and consummation of the sale of the Purchased

---

[4] Findings of fact shall be construed as conclusions of law and conclusions of law shall be construed as findings of fact when appropriate. See Rule 52 of the Federal Rules of Civil Procedure (the "Federal Rules"), made applicable by Rule 7052 of the Bankruptcy Rules and Bankruptcy Rule 9014. To the extent that any finding of fact shall be determined to be a conclusion of law, it shall be so deemed and to the extent any conclusion of law shall be determined to be a finding of fact, it shall be so deemed.

2

Assets and the assignment of the Essential Contracts (as defined in the APA) free and clear of all interests; and (ii) requesting aid and recognition from this Court to give effect to the Canadian Orders.

B.   This Court has jurisdiction and authority to hear and determine the Sale Recognition Motion pursuant to 28 U.S.C. §§ 1334 and 157(b).

C.   Venue of these Chapter 15 Cases and the Motion in this Court and this District is proper under 28 U.S.C. § 1410.

D.   Based on the affidavits of service filed with, and representations made to, this Court: (i) notice of the Sale Recognition Motion and the Sale Recognition Hearing were proper, timely, adequate, appropriate and sufficient under the circumstances of these Chapter 15 Cases and complied with the various applicable requirements of the Bankruptcy Code, the Bankruptcy Rules, and the Local Rules (or such compliance is hereby waived); and (ii) no other or further notice of the Sale Recognition Motion or the Sale Recognition Hearing or the entry of this Order is necessary, appropriate or shall be required.

E.   Under the circumstances of the Chapter 15 Cases, the Foreign Representative provided a reasonable opportunity to object and be heard with respect to the Sale Recognition Motion and the relief requested therein to the necessary parties in interest, including the following (and subject to any orders of this Court otherwise limiting notice in these Chapter 15 Cases): (i) the Core Notice Parties; (ii) any party with a security interest in the Debtors' assets located within the territory of the United States impacted by the Sale which interest is evidenced by a filing of such security interest with the appropriate agency for filing under the Uniform Commercial Code in the United States; (iii) all counterparties to contracts to be assigned under the Assignment Order; and (iv) all counterparties to contracts involving assets located with the territory of the

United States, which contracts are excluded contracts and are not to be assumed by the Purchaser. Additionally, all Core Notice Parties and Notice Parties have been on notice since January 23, 2016 of the possibility that the Foreign Representative would file a motion related to sale recognition that would be heard by this Court on February 19, 2016 at 10:00 a.m. This Order constitutes a final and appealable order within the meaning of 28 U.S.C. § 158(a).

F.     The relief granted herein is necessary and appropriate, is in the interest of the public, promotes international comity, is consistent with the public policy of the United States, is warranted pursuant to sections 105(a), 365, 1501, 1517, 1519, 1520, 1521 and 363 (b), (f), (m) and (n) (as made applicable by section 1520(a)(2)) of the Bankruptcy Code, and will not cause any hardship to any parties in interest that is not outweighed by the benefits of the relief granted.

G.     The APA requires the assignment of the Essential Contracts. Such assignment by order of the Canadian Court will only be effective provided cure costs are paid. As such, enforcement in the United States of the assignment of the Essential Contracts to the Purchaser does not present any public policy conflict or any issue concerning protection of the interests of the parties to the Essential Contracts that would prevent this Court from entering this Order.

H.     Based on information contained in the Meakin Declaration (including the exhibits thereto) the February 2nd Nowlan Affidavit and the Osler Affidavit, the Debtors, through Origin, conducted a sales and investment solicitation process (the "SISP"). The Canadian Court approved the APA resulting from the SISP and the Sale.

I.     The Monitor provided a report to the Canadian Court indicating that in its view, the SISP was fair and reasonable, and the APA and the Sale would be more beneficial to the creditors than a sale or disposition under a bankruptcy. The Purchaser has indicated that it is able and has agreed to assume and perform the obligations of the Debtors under the Essential Contracts in

accordance with their terms, and it is appropriate that the Purchased Assets, including the Essential Contracts, be transferred, assigned, and vested in the Purchaser.

J. Based upon the findings of the Canadian Court, this Court finds that the consideration provided by the Purchaser is fair and reasonable.

K. Based upon the findings of the Canadian Court, this Court finds that the Purchase Price constitutes fair consideration and reasonably equivalent value for the Purchased Assets and therefore, in recognizing and enforcing the Canadian Orders, this Court recognizes the Purchase Price as constituting fair consideration and reasonably equivalent value for the Purchased Assets under the Bankruptcy Code, the Uniform Fraudulent Transfer Act, the Uniform Fraudulent Conveyance Act, and the laws of the United States, any state, territory, possession thereof, or the District of Columbia.

L. Based upon the findings of the Canadian Court, this Court finds that no bulk sales or any similar law of any state or other jurisdiction shall apply in any way to the Sale and, in recognizing and enforcing the Canadian Orders herein.

M. Time is of the essence in consummating the Sale. To maximize the value of the Purchased Assets, it is essential that the Sale occur promptly. Accordingly, there is cause to waive the stay that would otherwise be applicable under Bankruptcy Rule 6004.

N. In recognition and enforcement of the Canadian Orders, this Court recognizes the Canadian Court's *nunc pro tunc* approval of the SISP and therefore recognizes that the negotiations over the terms of the APA were conducted fairly, in good faith, and without collusion.

O. Based upon the findings of the Canadian Court and the record made before this Court, the Purchaser has acted in good faith within the meaning of section 363(m) of the Bankruptcy Code as made applicable by section 1520(a)(2) of the Bankruptcy Code.

P. Based upon the findings of the Canadian Court and the record made before this Court, none of the Foreign Representative, the Purchaser, nor the Debtors engaged in any conduct that would cause or permit the APA or the recognition and enforcement of the Sale as authorized by the Canadian Court to be avoided, or costs or damages to be imposed, under section 363(n) of the Bankruptcy Code as made applicable by section 1520(a)(2) of the Bankruptcy Code.

Q. Based upon the findings of the Canadian Court and the record made before this Court, the APA was not entered into for the purpose of hindering, delaying, or defrauding present or future creditors of the Debtors under the Bankruptcy Code or under the laws of the United States, any state, territory, possession thereof, or the District of Columbia.

R. Consistent with the Canadian's Court's authorization of the Sale and the Canadian Orders, as recognized and enforced herein, the Debtors may sell the Purchased Assets free and clear of all interests, to the extent provided in the APA, the Canadian Orders and this Order, because, with respect to each creditor asserting an interest, one or more of the standards set forth in section 363(f)(1)-(5) of the Bankruptcy Code, as made applicable by section 1520(a)(2) of the Bankruptcy Code, has been satisfied. Those holders of interests who did not object or who withdrew their objections to the Sale Recognition Motion are deemed to have consented to the Sale Recognition Motion pursuant to section 363(f)(2) of the Bankruptcy Code as made applicable by section 1520(a)(2) of the Bankruptcy Code.

S. The Purchaser would not have entered into the APA and would not consummate the transactions contemplated thereby, thus adversely affecting the Debtors, their creditors, and other

6

parties in interest if either: (i) the sale of the Purchased Assets to the Purchaser was not free and clear of all interests, except as otherwise provided in the APA; or (ii) the Purchaser would, or in the future could, be liable for any of such interests or any claims against the Debtors based upon successor or vicarious liability or otherwise, except as provided in APA.

**IT IS FURTHER HEREBY ORDERED, ADJUDGED, and DECREED that:**

1. The Motion is GRANTED, as set forth herein.

2. The Canadian Orders, copies of which are attached hereto as Exhibits 2 through 4, are recognized in full and given full force and effect in the United States.

3. All objections to the entry of this Order that have not been withdrawn, waived, settled, or otherwise resolved pursuant to the terms hereof, are denied and overruled on the merits.

4. Pursuant to the recognition and enforcement of the Canadian Orders herein and consistent with sections 105, 363, 365, 1501, 1520 and 1521 of the Bankruptcy Code, to the extent permitted by the Canadian Orders, each of the Debtors, the Purchaser, and the Foreign Representative is authorized to take any and all actions necessary or appropriate to: (a) consummate the Sale of the Purchased Assets to the Purchaser in accordance with the APA, the Canadian Orders and this Order; and (b) perform, consummate, implement, and close fully the APA, together with all additional instruments and documents that may be reasonably necessary or desirable to implement the APA and the Sale as authorized by the Canadian Court through the Canadian Orders and recognized and enforced herein.

**TRANSFER OF THE PURCHASED ASSETS**

5. Pursuant to the recognition and enforcement of the Canadian Orders herein and consistent with sections 105(a), 1520, 1521 and 363(f), as made applicable by section

1520(a)(2), of the Bankruptcy Code, and as provided for in the Canadian Orders, upon delivery of the Monitor's Certificate to the Purchaser in accordance with the Canadian Orders, the Purchased Assets shall absolutely vest, without further instrument of transfer or assignment, in the Purchaser and shall be a legal, valid, and effective transfer of the Purchased Assets free and clear of each of the following (collectively, the "Interests"): any and all security interests (whether contractual, statutory, or otherwise), mortgages, pledges, options, warrants, trusts or deemed trusts (whether contractual, statutory, or otherwise), encumbrances, obligations, liabilities, demands, guarantees, restrictions, contractual commitments, rights, including without limitation, rights of first refusal and rights of set-off, liens, executions, levies, penalties, charges, or other financial or monetary claims, adverse claims, or rights of use, puts or forced sales provisions exercisable as a consequence of or arising from the closing of the Sale, whether arising prior to or subsequent to the commencement of the Canadian Proceeding and these Chapter 15 Cases, whether or not they have attached or been perfected, registered, or filed and whether secured, unsecured, legal, equitable, possessory or otherwise, actual or threatened civil, criminal, administrative, regulatory, arbitral or investigative inquiry, action, complaint, suit, investigation, dispute, petition or proceeding by or before any governmental authority or person at law or in equity whether imposed by agreement, understanding, law, equity, or otherwise, and any claim or demand resulting therefrom including, without limiting the generality of the foregoing: (a) any encumbrances or charges created by the Canadian Orders and/or any subsequent charges created by the Canadian Court; (b) all charges, security interests, or claims evidenced by any personal property registry system in the United States; and (c) excluded liabilities as set forth in section 2.2 of the APA. Notwithstanding the previous sentence, nothing contained herein shall limit the obligations of the Purchaser to assume the Assumed Obligations

(as defined in the APA), and to perform its obligations under the Assumed Contracts.

6. Except as expressly provided in the APA, the Canadian Orders, and/or this Order, and consistent the relief granted by the Canadian Orders and with sections 105(a), 1520, 1521 and 363(f), as made applicable by section 1520(a)(2), of the Bankruptcy Code, upon delivery of the Monitor's Certificate, closing shall be deemed to have occurred (the "Time of Closing"): (a) the Purchased Assets shall be sold, transferred, or otherwise conveyed to the Purchaser free and clear of all Interests; (b) no holder of an Interest against the Debtors shall interfere with the Purchaser's title to or use and enjoyment of the Purchased Assets based on or related to such Interests; and (c) the APA, the Sale, and any instruments contemplated thereby shall be enforceable against and binding upon, and not subject to rejection or avoidance by, the Debtors or any successor thereof. All persons or entities holding Interests in, to or against the Purchased Assets are forever barred from asserting such Interests against the Purchaser, its affiliates, successors and assigns, and current affiliates, officers, directors, employees, managers, partners, members, financial advisors, attorneys, agents, and representatives (collectively, the "Purchaser Releasees") or such Purchased Assets after the Time of Closing.

7. Except as otherwise provided in the APA, any and all Purchased Assets in the possession or control of any person or entity, including, without limitation, any vendor, supplier, or employee of the Debtors shall be transferred to the Purchaser free and clear of all Interests, and, upon reasonable request of the Purchaser, all such persons or entities are directed to surrender possession of the Purchased Assets to the Purchaser at the Time of Closing.

8. To the extent set out under the Canadian Orders, none of the Purchaser, or its affiliates, members, and shareholders shall be deemed, as a result of any action taken in connection with the Sale or the Purchaser's post-closing use or operation of the Purchased

9

Assets, to: (a) have, de facto or otherwise, merged or consolidated with or into the Debtors; or (b) be a continuation or substantial continuation of the Debtors or any enterprise of the Debtors. Except for the Assumed Obligations, the transfer of the Purchased Assets to the Purchaser under the APA, the Canadian Orders, and this Order shall not, to the extent provided for in the Canadian Orders, result in the Purchaser Releasees having any liability or responsibility whatsoever: (y) for any Interest against the Debtors or against an insider of the Debtors; or (z) to the Debtors, except as is expressly set forth in the APA, the Canadian Orders, this Order, and/or any other order of the Canadian Court. Without limiting the generality of the foregoing, except as otherwise provided in the APA, the Canadian Orders, this Order, or any other order of the Canadian Court, the conveyance of the Debtors' rights, title, and interest in the Purchased Assets to the Purchaser under the APA shall not, to the extent provided for in the Canadian Orders result in any Purchaser Releasee having any liability or responsibility whatsoever for any: (a) Interest, whether at law or in equity, whether by payment, setoff, or otherwise, directly or indirectly; (b) obligation under any of the Debtors' labor or employment agreements; (c) of the Debtors' mortgages, deeds of trust, and security interests; (d) intercompany loans and receivables between the Debtors and any non-debtor subsidiary or affiliate; (e) of the Debtors' pension, welfare, compensation or other employee benefit plans, agreements, practices and programs; (f) of the Debtors' other employee, worker's compensation, occupational disease, unemployment, or temporary disability related claims, including without limitation, claims that might arise under or pursuant to (i) the Employee Retirement Income Security Act of 1974, as amended, (ii) the Fair Labor Standards Act, (iii) Title VII of the Civil Rights Act of 1964, (iv) the Federal Rehabilitation Act of 1973, (v) the National Labor Relations Act, (vi) the Worker Adjustment and Retraining Act of 1988, (vii) the Age Discrimination and Employee Act of 1976 and Age

Discrimination in Employment Act, as amended, (viii) the Americans with Disabilities Act of 1990, (ix) the Consolidated Omnibus Budget Reconciliation Act of 1985, (x) state discrimination laws, (xi) state unemployment compensation laws or any other similar state laws, (xii) any other state or federal benefits or claims relating to any employment with the Debtors or any of their predecessors; or (g) successor or vicarious liabilities of any kind or character, including, but not limited to, federal, state, or other tax liabilities, U.S. or foreign pension liabilities, or liabilities based on any theory of antitrust, environmental, labor law, alter ego, veil piercing, continuity of enterprise, mere continuation, product line, de facto merger or substantial continuity, whether known or unknown, whether legal or equitable, matured or unmatured, contingent or noncontingent, liquidated or unliquidated, asserted or unasserted, whether arising prior to or subsequent to the commencement of these Chapter 15 Cases, whether imposed by agreement, understanding, law, equity, or otherwise with respect to any of the Debtors or any obligations of the Debtors, including, but not limited to, in the case of liabilities on account of any taxes arising, accruing or payable under, out of, in connection with, or in any way relating to the operation of the Debtors' business prior to the Time of Closing or any taxes in connection with, or in any way relating to the cancellation of debt of the Debtors or their affiliates.

9. Pursuant to the Canadian Orders and this Court's recognition and enforcement thereof herein, the entry of this Order: (a) is and shall be effective, to the extent provided in the APA and the Canadian Orders, to release, extinguish, expunge, and discharge all Interests existing as to the Purchased Assets prior to the Time of Closing, ; and (b) shall be binding upon and shall govern the acts of all entities, including, without limitation, all filing agents, filing officers, title agents, title companies, recorders of mortgages, recorders of deeds, recorders of fees, registrars of deeds, administrative agencies, governmental departments, secretaries of state,

federal, state, and local officials, and all other persons and entities, who may be required by operation of law, the duties of their office, or contract, to accept, file, register or otherwise record or release any documents or instruments that reflect that the Purchaser is the assignee of the Purchased Assets free and clear of all Interests, except as expressly provided in the APA and the Canadian Orders.

10. Consistent with the Canadian Orders and this Order, each and every federal, state, and local governmental agency or department is authorized to accept any and all documents and instruments necessary and appropriate to consummate the Sale.

11. Except with respect to enforcing the terms of the Canadian Orders or this Order, absent a stay pending appeal, no person shall take any action to prevent or enjoin or otherwise interfere with consummation of the Sale.

12. Effective as of the Time of Closing, the Canadian Orders and this Order shall constitute for any and all purposes a full and complete general assignment, conveyance, and transfer of the Debtors' interests in the Purchased Assets.

**TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES**

13. Pursuant to the Canadian Orders recognized and enforced by this Court herein, as provided in the APA and the Canadian Orders, at the Time of Closing, the Assumed Contracts shall be transferred to, and remain in full force and effect for the benefit of, the Purchaser in accordance with their respective terms. To the extent provided for in the Canadian Orders, the transfer and assignment of the Essential Contracts shall be valid notwithstanding any restriction, condition, or prohibition contained in any such Essential Contract relating to the assignment thereof (including those of the type described in sections 365(b)(2) and (f) of the Bankruptcy Code) that prohibits, restricts, or conditions such assignment or transfer or requires the consent of any party to such assignment or transfer.

14. As provided in paragraph 4 of the Vesting Order, the assignment of the rights and obligations of the Debtors under the Essential Contracts to the Purchaser, pursuant to section 2.3 of the APA, is valid and binding upon all of the counterparties to the Essential Contracts, without further documentation, as if the Purchaser was party to the Essential Contracts, notwithstanding any restriction or prohibition contained in any such Essential Contract relating to the assignment thereof, including any provision requiring the consent of any party to an Essential Contract.

16. Each counterparty to the Essential Contracts is prohibited from exercising any right or remedy under the Essential Contracts by reason of any non-monetary defaults thereunder arising from the commencement or pendency of the Canadian Proceeding or these Chapter 15 Cases or the solvency or financial condition of the Debtors.

17. This Court shall retain jurisdiction in the United States to enforce any and all terms and provisions of the APA, the Canadian Orders and/or this Order with respect to any such Essential Contract.

## ADDITIONAL PROVISIONS

18. Based upon the findings of the Canadian Court, this Court finds that the Purchaser, is a purchaser in good faith within the meaning of section 363(m) of the Bankruptcy Code, made applicable by section 1520(a)(2) of the Bankruptcy Code, shall be entitled to all of the protections of section 363(m) of the Bankruptcy Code. The reversal or modification on appeal of the recognition and enforcement provided herein of the Sale authorized by the Canadian Court through the Canadian Orders and recognized and enforced herein shall not affect the validity of the Sale unless, prior to the Time of Closing, such authorization is duly stayed pending appeal.

19. The terms and provisions of this Order shall be binding on and inure to the benefit

of the Foreign Representative, the Purchaser, the Debtors' creditors, and all other parties in interest, and any successors of the Debtors, the Purchaser, and the Debtors' creditors, including any trustee(s), examiner(s), or receiver(s) appointed in these cases or under any chapter of the Bankruptcy Code or any other law, and all such terms and provisions shall likewise be binding on such trustee(s), examiner(s), or receiver(s) and shall not be subject to rejection or avoidance by the Debtors, their creditors, or any trustee(s), examiner(s), or receiver(s). The terms and provisions of the APA shall be binding on and inure to the benefit of the Purchaser, the Debtors' creditors, and all other parties in interest, and any successors of the Debtors, the Purchaser and the Debtors' creditors, including any trustee(s), examiner(s), or receiver(s) appointed in these cases or under any chapter of the Bankruptcy Code or any other law, and all such terms and provisions shall likewise be binding on such trustee(s), examiner(s), or receiver(s) and shall not be subject to rejection or avoidance by the Debtors, their creditors, or any trustee(s), examiner(s), or receiver(s).

20. The failure to include any particular provision of the Canadian Orders or the APA, or any related agreements, in this Order shall not diminish or impair the effectiveness of that provision, it being the intent of this Court that the Canadian Orders, the APA and any related agreements, with such amendments thereto as may be made by the parties in accordance with the Canadian Orders, be recognized, given effect and enforced in their entirety.

21. Notwithstanding any provision in the Bankruptcy Rules to the contrary: (a) the terms of this Order shall be immediately effective and enforceable upon its entry; (b) the Debtors, the Purchaser, and the Foreign Representative are not subject to any stay in the implementation, enforcement, or realization of the relief granted in this Order; and (c) the Debtors, the Purchaser, and the Foreign Representative may, in their discretion and without

14

further delay, take any action and perform any act authorized under the Canadian Orders and/or this Order.

22. To the extent permitted by section 525 of the Bankruptcy Code, no governmental unit may revoke or suspend any permit or license relating to the operation of the Purchased Assets sold, transferred, or conveyed to the Purchaser on account of the filing or pendency of these Chapter 15 Cases or the recognition and enforcement of the Sale authorized by the Canadian Court through the Canadian Orders herein.

23. Nothing in this Order shall be deemed to waive, release, extinguish, or estop the Debtors or the Foreign Representative from asserting, or otherwise impair or diminish, any right (including, without limitation, any right of recoupment), claim, cause of action, defense, offset or counterclaim in respect of any asset that is not a Purchased Asset.

24. The provisions of this Order are non-severable and mutually dependent.

25. Other than as explicitly set forth herein, this Court shall retain jurisdiction with respect to any and all matters, claims, rights, or disputes arising from or related to the implementation or interpretation of this Order.

Dated: Wilmington, Delaware
       March 4, 2016

_____
HONORABLE LAURIE SELBER SILVERSTEIN
UNITED STATES BANKRUPTCY JUDGE